KIRBY AISNER & CURLEY, LLP  
*Attorneys for the Debtor*  
700 Post Road, Suite 237  
Scarsdale, New York 1583  
(914) 401-9500  
Erica R. Aisner, Esq.  

Hearing Date: October 4, 2023  
Hearing Time: 1:30 p.m.  

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-----------------------------------------------------------X  
In re:  

9th & 10th STREET, L.L.C.,  

                        Debtor.  
-----------------------------------------------------------X  

Chapter 11  
Case No. 23-10423 (dsj)  

### AMENDED DECLARATION IN SUPPORT OF CONFIRMATION OF DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

GREGG SINGER, under penalties of perjury, declares and says:

      1.     I am the President of Sing Fina Corp., the Manager of 9th & 10th Street, L.L.C., the above captioned debtor (the "Debtor"), and, as such, I am fully familiar with the facts and circumstances set forth herein. In addition, in making this Declaration, I have relied on the advice of counsel with respect to any legal conclusions drawn herein.

      2.     I submit this Amended[1] Declaration in support of confirmation of the Debtor's Third Amended Plan of Reorganization dated August 30, 2023 [ECF No. 61] (the "Plan").

**I.**     **Background**

      3.     The Debtor owns a 5-story historic property which was built in the early 1906 and operated as a public elementary school (P.S. 64) from 1907 to 1977.

      4.     On March 21, 2023, the Debtor filed a voluntary bankruptcy petition pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

      5.     On August 30, 2023, the Debtor filed the Plan together with a Second Amended Disclosure Statement [ECF No. 60], both dated August 30, 2023 (the "Disclosure Statement") which included comments discussed on the record at a hearing held on August 29, 2023.

---

[1] This Declaration is being amended in order to correct balloting totals as reflected in the Amended Ballot Certification [ECF No. 75].

6. On August 30, 2023, the Court entered an order [ECF No. 62] approving the Disclosure Statement and scheduling a hearing to consider confirmation of the Plan (the "Disclosure Statement Approval Order").

7. As set forth in the Certificate of Service of Bryn Leonardo filed on August 31, 2023 [ECF No. 63], Plan solicitation packages were sent to all creditors and parties in interest, which included (i) the Disclosure Statement Approval Order, containing notice of the hearing date scheduled by the Court and all related deadlines; (ii) the Disclosure Statement; (iii) the Plan; and (iv) Ballot (collectively, the "Solicitation Materials").

## II. The Plan

A. Summary: The Plan provides that funding shall primarily come from either Exit Financing, provided it is procured by the Payoff Deadline, or in the alternative, from the Alternative Sale Process and specifically from the sale of the Property at auction. Additional funding may also come from the estate Causes of Action.

B. The Plan divides the Debtor's creditors into Classes and provides for the treatment of each such Class as follows:

(a) **Class 1 – Allowed Secured Claim of New York City:** Class 1 consists of New York City's secured real estate tax claims, and unpaid water charges, which shall be paid in full plus interest at the applicable statutory rate on the Closing Date by the Debtor or Debtor's estate.

(b) **Class 2 – Allowed Secured Claim of Lender:** Class 2 consists of the Allowed Secured Claim of Lender which shall accept the Discounted Payoff, on or before the Payoff Deadline. In the event that the Lender does not timely receive the Discounted Payoff in full on or before the Payoff Deadline, the Alternative Sale Process shall be triggered, and the Property shall be sold at a public auction. The Lender shall be permitted to credit bid up to the amount of the Lender's Total Claim. If the Lender is the winning bidder at auction by virtue of its credit bid, it shall pay, (1) the Allowed Secured Class 1 Claim in full, (2) reasonable Allowed Administrative Professional Fees through the Closing Date, not to include any fees incurred in connection with the commencement or prosecution of any litigation or adversary proceedings, except as otherwise consented to in writing by the Lender, (3) United States Trustee fees and (4) $250,000 to be shared *pro rata* with the holders of Allowed Class 3 and 4 Claims. The Lender shall release any Claim it may have to Causes of Action held by the estate as of the Confirmation Date and upon the Closing Date and any Claim it may have to a deficiency against any third-party guarantor.

(c) **Class 3 – Allowed Secured Claim of Undersecured Claims of lienholders against the Property:** Class 3 shall consist of Allowed Undersecured Claims of lienholders against the Property, whether such liens were

2

the product of a consensual mortgage, judgment, or statutory lien. Holders of Allowed Class 3 Claims shall be paid up to 100% of their Allowed Claims, without interest, as follows:

***Provided that the Alternative Sale Process is not triggered***, holders of Allowed Class 3 Claims may select one of the following options: (i) *Option 1:* On the Closing of a Funding Transaction, such holder shall receive payment in the amount of 10% of the outstanding principal (original loan amount) due in connection with their Allowed Class 3 Claim; or (ii) *Option 2:* 100% of the outstanding principal due in connection with their Allowed Class 3 Claim, payable as follows: (x) 50% payable in ten (10) equal annual installments beginning six (6) months after the issuance of a Certificate of Occupancy by the City and (y) 50% payable in five (5) equal annual installments payable in years eleven (11) through fifteen (15) after issuance of the Certificate of Occupancy.

***In the event that an Alternative Sale Process is triggered***, and the Property is sold for an amount in excess of the Lender's Total Claim, or such lower amount which it agrees to accept, the holders of Allowed Class 3 Claims shall be paid up to 100% of their Allowed Claims, from the sale proceeds, in accordance with their respective lien priority, after the payment of unclassified Claims and Allowed Class 1 and 2 Claims. In the event that the Property is sold to the Lender pursuant to its credit bid, the holders of Class 3 and 4 Claims shall be paid $250,000, pro rata, which shall be funded by Lender.

Holders of Allowed Class 3 Claims shall also receive a *Pro Rata* payment, together with Class 4, from the Net Litigation Recovery, if any, after the payment in full of all unclassified Claims.

(d) **Class 4 – Allowed General Unsecured Claims:** Class 4 shall consist of Allowed General Unsecured Claims which shall be paid up to 100% of their Allowed Claim, without interest, as follows:

***Provided that the Alternative Sale Process is not triggered***, holders of Allowed Class 4 Claims may select one of the following options: (i) *Option 1: O*n the Closing of a Funding Transaction, such holder shall receive payment in the amount of 5% of their Allowed Class 4 Claim; or (ii) *Option 2:* 100% of their Allowed Class 4 Claim, without interest, payable in ten (10) equal annual installments beginning six (6) months after the issuance of a Certificate of Occupancy by the City.

***In the event that an Alternative Sale Process is triggered***, and the Property is sold in excess of the Lender's Total Claim, or such lower amount which it agrees to accept, the holders of Allowed Class 4 Claims shall collectively share, *pro rata*, up to 100% of their Allowed Claim, after the payment of all unclassified Claims and Allowed Class 1, 2 and 3 Claims. In the event that the Property is sold to the Lender pursuant to its credit bid, the holders of Allowed Class 3 and 4 Claims, other than any Claim which arises as a

3

        result of a deficiency due to the Lender, shall be paid $250,000, *pro rata*, which shall be funded by Lender.

        Holders of Allowed Class 4 Claims shall also receive a *Pro Rata* payment, together with Class 3, from the Net Litigation Recovery, if any, after the payment in full of all unclassified Claims.

    (e)  **Class 5 – Claims of the Debtor's Interest Holders:** Class 5 shall consist of the Debtor's Interest Holders who shall receive any surplus generated from a sale of the Property or Net Proceeds in accordance with the Debtor's Operating Agreement, after the payment in full of all senior unclassified and classified Allowed Claims.

C.  The Plan also provides for the payment of Unclassified Claims as follows:

    (a)  **Non-Professional Administrative Expense Claims:** These Allowed Claims shall be paid in full in the ordinary course of business by the Debtor or as may be agreed upon between the holder of such Administrative Expense Claim and the Debtor.

    (b)  **Payment of Administrative Professional Claims:** Except as otherwise provided herein, all Professional Claims shall be paid by, or on behalf of, the Debtor on the later of (i) the Closing Date, or (ii) upon the Order Allowing such Professional Claim becoming a Final Order. The Court must approve all requests for professional compensation and expenses incurred by the Debtor through the Confirmation Date.

    (c)  **United States Trustee's Fees:** The Debtor or the Debtor's estate shall pay outstanding United States Trustee statutory fees in full, in Cash, on the Closing Date, to the extent that there is any outstanding balance due at such time. The Debtor or Debtor's estate shall be responsible for payment of United States Trustee quarterly fees through the entry of a final decree closing the Chapter 11 Case.

    (d)  **All Priority Tax Claims** (excluding real estate taxes which are separately classified), to be paid in full on the Closing Date by the Debtor or Debtor's estate.

**III.**  **Acceptance of the Plan:** The Plan designates that Classes 2, 3, and 4 are Impaired, all of which have voted to accept the Plan.

  A.  The sole member of Class 2 returned one timely ballot totaling $102,300,748.25 (not including post-petition accrued interest), voting in favor of the Plan. As such, Class 2 has voted to accept the Plan.

  B.  Nine ballots were returned by holders of Allowed Class 3 Claims totaling $16,981,000.58, all of which voted in favor of the Plan. Of that amount, seven ballots were from non-insiders or non-affiliates whose Allowed Class 3 Claims total $16,390,789.30. As such, Class 3 has

voted to accept the Plan.

C. Seven ballots were returned by holders of Allowed Class 4 Claims totaling $4,862,711.98, all of which voted in favor of the Plan. Of that amount, three ballots were from non-insiders or non-affiliates whose Allowed Class 4 Claims total $1,186,672.26. As such, Class 4 has voted to accept the Plan.

D. On September 29, 2023, a Certificate as to Balloting was filed with the Court [ECF No. 72].

IV. **Confirmation of the Plan Under Section 1129(a) and (b) of the Bankruptcy Code.**

A. I have been advised by counsel to the Debtor that Section 1129(a)(1) of the Bankruptcy Code requires that the Plan comply with the applicable provisions of Title 11 which I believe that it does, as set forth in detail below.

(a) **Section 1122(a)** of the Bankruptcy Code, which governs classification of claims, requires that all claims or interests within a particular class must be "substantially similar to the other claims or interests of such class." The Plan complies with this provision in that it provides for the following separate classes of similarly situated creditors in Article II of the Plan (as set forth in Section II (7) herein).

(b) **Section 1123(a) sets forth various provisions that must be contained in the Plan:**

(i) Section 1123(a)(1) requires that a plan shall "designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in Section 507(a)(2), 507(a)(3), or 507(a)(8) of this title, and classes of interests." The Plan complies with this provision as Article II, Section (B) of the Plan designates the Classes of Claims and Interests. (as set forth in Section II herein).

(ii) Section 1123(a)(2) Section 1123(a)(2) requires that a plan shall "specify any class of claims or interests that is not impaired under the plan." The Plan complies with this provision in so far as the interests of Classes 1 and 5 are not Impaired under the Plan, are not entitled to vote on the Plan, and are deemed to accept the Plan (See Article II, Sections (B)(1) and (B)(5) of the Plan).

(iii) Section 1123(a)(3) requires that a plan shall "specify the treatment of any class of claims or interests that is impaired under the Plan." The Plan complies with this provision as Article II, Sections (B)(2), (3) and (4) of the Plan provides for the treatment of Impaired Classes under the Plan.

(iv) Section 1123(a)(4) requires that a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." The Plan complies with this provision in that no Claim or Interest within any Class will receive treatment more or less favorable than the other Claims or Interests within that Class.

5

  (v) <u>Section 1123(a)(5)</u> requires that a plan shall "provide adequate means for the plan's implementation……" Article III of the Plan entitled <u>Means for Execution</u>, provides a detailed description of the means for the Plan's implementation and execution, and states that payments under the Plan due on the Closing Date shall be paid from either, a Funding Transaction, or, in the event of an Alternative Sale Process, from the proceeds of sale (which may include agreed carveouts and funding from the Lender if it is the successful bidder by virtue of its credit bid.

  (vi) <u>Section 1123(a)(6)</u> is inapplicable in this case because there is no issuance of non-voting equity securities under the Plan.

  (vii) <u>Section 1123(a)(7)</u> is inapplicable because there are no selections of any officer, director, or trustee under the Plan.

  (viii) <u>Section 1123(a)(8)</u> applies to individual debtors and is therefore inapplicable to this case.

(f)  Based upon the foregoing, it is respectfully submitted that the Plan complies with all of the provisions mandated by Section 1123(a) of the Bankruptcy Code.

B. **Section 1123(b) sets forth various provisions that, subject to subsection (a), may also be included in a Plan.**

 (a) <u>Section 1123(b)(1)</u> provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." Article II of the Plan provides for the designation and treatment of those Classes of Claims and of such Classes, provides that Classes 2, 3 and 4 are Impaired and Classes 1 and 5 are not.

 (b) <u>Section 1123(b)(2)</u> provides that a plan may "subject to section 365 of this title, provide for the assumption, rejection or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." The Plan provides in Article V that any executory contracts or unexpired leases that are not expressly assumed or rejected prior to Confirmation shall be deemed rejected as of the Petition Date.

 (c) <u>Section 1123(b)(3)</u> provides that a plan may "provide for the retention and enforcement by the debtor of any such claim or interest belonging to the debtor or to the estate." Article II, Section 2(B) of the Plan provides that, regardless of the disposition of the Property under the Plan, the Debtor shall retain and prosecute all estate Causes of Action on behalf of the Debtor's estate free and clear of the liens of the Lender.

 (d) <u>Section 1123(b)(4)</u> provides that a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." The Plan provides that if the Debtor is unable to close on a Funding Transaction and pay the Discounted Payoff by the Payoff Deadline that the Automatic Sale Process will be triggered and the Property will be liquidated at a public auction.

(e) Section 1123(b)(5) provides that a plan may "modify the rights of holders of claims or leave unaffected the rights of holders of any class of claims." The treatment of each Class of Claims is set forth in Article II of the Plan entitled Classification and Treatment of Claims and Equity Interests.

(f) Section 1123(b)(6) provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of this Title." The Debtor, based upon the advice of counsel, submits that the Plan does not contain any provision that is inconsistent with the applicable provisions of Title 11 and the material provisions of the Plan are otherwise detailed herein.

C. **Section 1129 – Requirements for Confirmation of a Plan**

(a) Section 1129(a)(1) requires that "the plan complies with the applicable provisions of this title." As set forth in this Declaration, the Plan complies with the applicable provisions of Sections 1122 and 1123 and therefore complies with Section 1129(a)(1).

(b) Section 1129(a)(2) provides that "the proponent of the plan complies with the applicable provisions of this title." The Debtor has complied with all the provisions of Chapter 11 in connection with the Plan and its solicitation. Accordingly, the proponent of the Plan has complied with Sections 1125, 1126 and 1129(a)(2) of the Bankruptcy Code.

(c) Section 1129(a)(3) provides that "the plan has been proposed in good faith and not by any means forbidden by law." The Debtor, together with counsel, spent much time and effort formulating a plan which was acceptable to its senior secured creditor as well as fair and equitable to the remaining creditors of the estate. The Debtor submits that the Plan has been proposed by the Debtor in good faith and not by any means forbidden by law in accordance with Section 1129(a)(3) of the Bankruptcy Code.

(d) Section 1129(a)(4) provides that "any payment…for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." Article II, Section (A)(1)(b) of the Plan provides for the payment of Administrative Professional Fees only upon approval by the Bankruptcy Court after proper notice and hearing.

(e) Section 1129(a)(5) provides that "the proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve as a director or officer and that the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the debtor." To the extent that the Debtor closes on a Funding Transaction, the current officers of the Debtor will remain unchanged. However, in the event that the Alternate Sale Process is triggered, the Property will be sold and the existing officers and directors will continue to serve as the Debtor winds down its affairs and prosecutes the estate Causes of Action for the benefit of the estate.

(f) Section 1129(a)(6) is not applicable to this matter.

(g) Section 1129(a)(7) provides that "with respect to each impaired class of claims or

interests, each holder of a claim or interest of such class has either accepted the plan or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date." As set forth above, Classes 2, 3 and 4, which are the Impaired Classes under the Plan have all voted to accept it.

(h) Section 1129(a)(8) provides that "with respect to each class of claims or interests, such class has accepted the plan or such class is not impaired under the plan." The Plan provides for three (3) Impaired Classes of Creditors. No Impaired Class of Creditors has voted to reject the Plan.

(i) Section 1129(a)(9) provides that holders of certain claims under Section 507 of the Bankruptcy Code receive distributions in a certain manner unless said class has agreed to a different treatment which requirement has been complied with in the Plan.

(j) Section 1129(a)(10) provides that "at least one class of claims that is impaired under the plan has accepted the plan." All Impaired Classes have voted to accept the Plan.

(k) Section 1129(a)(11) provides that "Confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor, unless such liquidation or reorganization is proposed in the plan." As set forth in Article IV, Section (2)(f) of the Disclosure Statement entitled Feasibility and "Best Interest" Tests, the Plan satisfies the Feasibility Test because it includes a failsafe measure in that if the Debtor is unable to close on a Funding Transaction and pay the Discounted Payoff by the Payoff Deadline, there is a mechanism by which the Property will be liquidated and the assets distributed in accordance with the priority scheme of the Bankruptcy Code. Based thereon, the Debtor submits that the Plan passes the feasibility test.

(l) Section 1129(a)(12) provides for "all fees payable under section 1930 of Title 28 have been paid or the plan provides for the payment of all such fees on the Effective Date of the Plan." Article II, Section (A)(2) of the Plan provides for the payment of all United States Trustee Fees.

(m) Sections 1129(a)(13)–(a)(16) are inapplicable to this case.

(n) Section 1129(b)(1) is satisfied under the Plan in that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Impaired Class of Claims. The treatment for the members of Classes 2, 3 and 4 is consistent with the treatment of similar claim holders and no junior class of creditors shall receive more than a senior class of creditors.

8

## **CONCLUSION**

The Debtor respectfully submits that the Plan satisfies each of the requirements set forth in Section 1129(a) of the Bankruptcy Code and confirmation is appropriate.

**WHEREFORE,** for the reasons set forth herein, the Debtor respectfully requests that the Court enter an order confirming the Plan.

Dated:  New York, New York
October 2, 2023

*/s/ Gregg Singer*
GREGG SINGER